IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:16-CV-244-FL

| | | |
|---|---|---|
| CHRISTOPHER LIGHTFOOT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | ORDER |
| GEORGIA-PACIFIC WOOD | ) | |
| PRODUCTS, LLC; GEORGIA-PACIFIC | ) | |
| LLC individually and as successor-in- | ) | |
| interest to Georgia-Pacific Corporation; | ) | |
| WEYERHAEUSER COMPANY; and | ) | |
| JOHN DOE #1, | ) | |
| | ) | |
| Defendants.[1] | ) | |

This matter is before the court on defendants' motion for reconsideration (DE 188) of the court's September 20, 2018, order, and, in the alternative, motion for certification of interlocutory appeal; defendants' notices regarding costs and fees and motions for additional fees (DE 190, 192); and defendant Georgia Pacific's motion for clarification (DE 194). These motions have been briefed, and the issues raised are ripe for ruling. For the following reasons, defendants' motion for reconsideration and certification is denied; attorney's fees are awarded as specified herein; defendants' motion for additional fees is granted in part and denied in part; and defendant Georgia-Pacific's motion for clarification is granted as set forth herein.

---

[1] The court constructively has amended the caption of this order to reflect dismissal by stipulation of former defendant Lowe's Home Centers, LLC (NC) ("Lowe's"), as well as unopposed summary judgment in favor of defendant Weyerhaeuser NR Company. The clerk is DIRECTED to note on the face of the docket that defendant Weyerhaeuser NR Company was terminated as a party on April 17, 2018. Unless otherwise specified, the term "defendants" as used herein refers collectively to the following moving defendants: Georgia-Pacific Wood Products, LLC and Georgia-Pacific LLC (together, "Georgia-Pacific"); and Weyerhaeuser Company ("Weyerhaeuser").

**STATEMENT OF THE CASE**

The court incorporates herein by reference the statement of the case set forth in the court's September 20, 2018, order. In that order, the court granted in part and denied in part defendants' motions to exclude plaintiff's experts, pursuant to Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). The court also denied defendants' motion to strike declarations filed by plaintiff in opposition to the motions to exclude, but the court awarded defendants alternative sanctions and relief, including attorney's fees and costs associated with the motion to strike and limited reopening of expert discovery. The court directed the parties to confer and file a joint notice (or separate notices if necessary) proposing a period of limited additional expert discovery, as well as a new deadline for summary judgment briefing. In addition the court directed defendants to file an itemized statement of reasonable attorney's fees and costs associated with the motion to strike.[2]

On October 9, 2018, defendants filed the instant motion for reconsideration of the court's September 20, 2018, order. In the alternative, defendants request that the court certify its order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) and to stay the remainder of the proceedings pending appeal. On October 19 and 20, 2018, defendants filed the instant notices regarding costs and fees and motions for additional fees. On October 22, 2018, defendant Georgia Pacific filed the instant motion for clarification of one aspect of the court's order pertaining to plaintiff's expert Dr. Rachael Jones ("Jones").

Plaintiff filed a response in opposition to defendants' motion for reconsideration on October 30, 2018, accompanied by certain expert materials previously filed in conjunction with the Daubert

---

[2] The court's order incorrectly referred to the motion to strike as the "motion to exclude" in four instances in discussing sanctions imposed in the alternative to defendants' motion to strike. (Order (DE 185) at 19, 48). The court AMENDS and CORRECTS its September 20, 2018, order to STRIKE these incorrect references and in their place state "motion to strike."

motions. Plaintiffs filed a response in opposition to defendants' notices regarding costs and fees and motions for additional fees, on November 2, 2018. Defendants replied with respect to these two sets of motions. Plaintiff did not respond to the instant motion for clarification.

**COURT'S DISCUSSION**

A.  Motion for Reconsideration

    1.  Standard of Review

"[A] district court retains the power to reconsider and modify its interlocutory judgments . . . at any time prior to final judgment when such is warranted." Am. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 514–15 (4th Cir. 2003). "Said power is committed to the discretion of the district court, and doctrines such as law of the case . . . have evolved as a means of guiding that discretion." Id. at 515 (internal citations omitted). According to the law of the case doctrine, an earlier decision by the court "must be followed unless (1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice." Id. (quotations omitted).

    2.  Analysis

Defendants argue that the court should reconsider denial of their Daubert motions, because the court incorrectly drew inferences in its September 20, 2018, order in the "light most favorable to plaintiff." (Def's Mem. (DE 189) at 6 (quoting Order (DE 185) at 5, 24, 28, 29, 33)). Defendants have not established, however, that doing so was clearly erroneous under the circumstances of this case.

3

The court discussed viewing "underlying facts" of the case in the "light most favorable to plaintiff" at multiple points in its order:

1) "For purposes of background to the instant Daubert motions, the facts underlying plaintiff's claims, viewed in the light most favorable to plaintiff, may be summarized as follows." (Order (DE 185) at 5).

2) " . . . . [D]efendants draw inferences from the underlying facts in the light most favorable to them, rather than in the light most favorable to plaintiff, as is required at this stage of the proceedings." (Id. at 24).

3) ". . . . [D]efendants do not draw inferences from the underlying facts in the light most favorable to plaintiff." (Id. at 28).

4) "Drawing all inferences from the underlying facts in the light most favorable to plaintiff, . . . ." (Id. at 29).

5) "[D]rawing facts in the light most favorable to plaintiff, Dr. Jones's opinion encompassing all of plaintiff's wood dust exposures is relevant in this case." (Id. at 33).

Consideration of the underlying facts in the light most favorable to plaintiff is a necessary component of the court's analysis, at this juncture, for determining whether plaintiff's expert opinions are based upon "sufficient facts or data" and applied "to the facts of the case." Federal Rule of Evidence 702(d) (emphasis added). As part of its gatekeeping obligation under Daubert, the court must determine whether the expert's "reasoning or methodology properly can be applied to the facts in issue." Daubert, 509 U.S. at 593 (emphasis added). Along these lines, as noted by the Advisory Committee Notes to Federal Rule of Evidence 702:

4

> [Rule 702] requires that expert testimony be based on sufficient underlying "facts or data." . . . . The language "facts or data" is broad enough to allow an expert to rely on <u>hypothetical facts that are supported by the evidence. When facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts</u>. The emphasis in the amendment on " sufficient facts or data" is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court <u>believes one version of the facts and not the other</u>.

Fed. R. Evid. 702, Advisory Committee Notes (2000) (emphasis added). Rule 702 thus confirms that the court may need to account for "competing versions of the facts," <u>id.</u>, and it should not disregard plaintiff's version of disputed facts when considering reliability and fit of an expert opinion under <u>Daubert</u>. See <u>Bresler v. Wilmington Tr. Co.</u>, 855 F.3d 178, 195 (4th Cir. 2017) ("[Q]uestions regarding the factual underpinnings of the expert witness' opinion affect the weight and credibility of the witness' assessment, not its admissibility."); <u>cf.</u> <u>Tyger Const. Co. Inc. v. Pensacola Const. Co.</u>, 29 F.3d 137, 143 (4th Cir. 1994) ("Expert opinion evidence based on <u>assumptions not supported by the record</u> should be excluded.") (emphasis added).

Defendants suggest that consideration of the underlying facts in light most favorable to plaintiff turns the standard of review for a <u>Daubert</u> motion on its head. It does not. As the court expressly noted in setting out the standard of review in its September 20, 2018, order: "'The proponent of the testimony must establish its admissibility by a preponderance of proof.' <u>Cooper v. Smith & Nephew, Inc.</u>, 259 F.3d 194, 199 (4th Cir. 2001)." (Order (DE 185) at 20). Nothing in the court's September 20, 2018, order relieves plaintiff of the obligation to prove the relevance and reliability of his experts by a preponderance of proof. Defendants' argument ignores a critical distinction between viewing the <u>expert evidence</u> in the light most favorable to plaintiff and viewing the <u>underlying facts</u> in the case in the light most favorable to plaintiff. Viewing the expert evidence in the light most favorable to plaintiff would be an abdication of the court's "basic gatekeeping

5

obligation" under Daubert. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999); Daubert, 509 U.S. at 592-93. Viewing the underlying facts in the case in the light most favorable to plaintiff, by contrast, is necessary to ensure the court has taken into consideration all of the "competing versions of the facts" when evaluating plaintiff's experts. Fed. R. Evid. 702, Advisory Committee Notes (2000).[3]

Defendants do not cite any binding authority supporting their argument that it is error for the court at this juncture to view the underlying facts in the light most favorable to plaintiff. Instead defendants cite a number of district court and out of circuit cases discussing or referencing summary judgment and Daubert standards. The cases cited, however, are inapposite. None hold or state that a court cannot consider the underlying facts in the light most favorable to plaintiff when determining relevance or reliability of an expert opinion.

Defendants discuss, for example, an unpublished district court opinion from the Central District of California, where the court commented upon its prior resolution of a Daubert motion and a summary judgment motion. See Abarca v. Merck & Co., No. 1:07-CV-388 DOC DLBX, 2012 WL 137749, at *5 (C.D. Cal. Jan. 17, 2012). There, the district court denied a defendant's motion to exclude an expert witness, and denied a defendant's motion for summary judgment in the same order. In denying defendant's motion for interlocutory appeal, the court commented on its prior ruling, which contained references to "drawing all inferences in favor of the non-movant," including

---

[3] Defendants point out that the court incorrectly described a "see also" citation in the court's order to General Electric Co v. Joiner, 522 U.S. 136, 152 (1997) as being to the concurring opinion of Justice Breyer, where the page cited instead is to the concurring in part and dissenting in part opinion of Justice Stephens. The court AMENDS and CORRECTS its September 20, 2018, order to STRIKE this incorrect citation and in its place instead incorporates by reference the law set forth in the discussion above.

its holding: "[d]rawing all inferences in favor of the non-movant, [the expert's] testimony presents a scientific dispute not resolvable as a matter of law." Id.

Abarca is inapposite for multiple reasons. First, Abarca does not discuss, as here, the distinction between viewing the underlying facts of the case and viewing the expert testimony itself in the light most favorable to plaintiff. Rather, the court discusses more broadly references to "drawing all inferences in favor of the non-movant" in resolving in the same order expert and summary judgment motions. Id. Second, the court does not cite any binding law in its discussion of "drawing all inferences," but rather notes "even if the Ninth Circuit found that the 'all favorable inferences' standard was inappropriate for a Daubert motion, it would not have a material effect on the case because the Court did not use that standard." Id. *7 (emphasis added). Finally, it is notable that the court in Abarca denied all the defendant's motions, despite the trial judge's own comments that the expert's opinions "were 'junk science' and 'slop.'" Id. *4. In sum, Abarca and other cases cited by defendants do not have probative value in resolving the issues in the instant matter.

Furthermore, and in the alternative, even if the court strikes all references in its September 20, 2018, order to drawing inferences from the underlying facts "in the light most favorable to plaintiff," and replaces such references to underlying facts as "supported by the record," the result of the court's decision would be no different. In those instances where the court discusses facts in the light most favorable to plaintiff, the court references evidence in the record, largely in the form of deposition testimony by plaintiff and plaintiff's father. (See Order (DE 185) at 24, 29-31). In that context, defendants have not demonstrated that plaintiff's expert opinions should be excluded because they were "based on assumptions not supported by the record." Tyger, 29 F.3d at 143.

7

In sum, defendant's have not demonstrated that the court's September 20, 2018, order was clearly incorrect where it considered underlying facts of the case "in the light most favorable to plaintiff." Therefore, defendant's motion for reconsideration is denied.

B.    Motion for Interlocutory Appeal

Defendants request, in the alternative, that the court certify the September 20, 2018, order for interlocutory appeal and stay the remainder of the proceedings pending appeal.

"When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order."  28 U.S.C. § 1292(b).  In addition, "application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order."  Id.

Defendants have not demonstrated that the criteria for certification of interlocutory appeal have been met.  First, the court's September 20, 2018, order does not involve a controlling question of law as to which there is substantial ground for difference of opinion.  Rather, as noted in the standard of review in that order, the court's determination to exclude or admit expert evidence was grounded in the Federal Rules of Evidence, and highly dependent upon the particular facts and circumstances of the record in this case. Such a determination, where "the district court has broad latitude in ruling on the admissibility of evidence, including expert opinion," is not an appropriate circumstance for certification of interlocutory appeal.  United States ex rel. Michaels v. Agape Senior Cmty., Inc., 848 F.3d 330, 341 (4th Cir. 2017).  Second, an immediate appeal from the order,

8

and a stay, will not materially advance the ultimate termination of the litigation. The case has not even advanced to summary judgment motions, which may yet raise further issues regarding the viability of plaintiff's claims for resolution by the court.

Therefore, defendants' alternative motion for interlocutory appeal is denied.

C.   Notices Regarding Fees

In accordance with the court's September 20, 2018, order, defendants have filed notices setting forth an itemized statement of attorney's fees associated exclusively with briefing on their motion to strike. Plaintiff in response argues that the fees sought appear unreasonably high.

"In calculating an award of attorney's fees, a court must first determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235, 243–44 (4th Cir. 2009). In deciding what constitutes a "reasonable" number of hours and rate, "a district court's discretion should be guided by the following twelve factors":

1) the time and labor expended;

2) the novelty and difficulty of the questions raised;

3) the skill required to properly perform the legal services rendered;

4) the attorney's opportunity costs in pressing the instant litigation;

5) the customary fee for like work;

6) the attorney's expectations at the outset of the litigation;

7) the time limitations imposed by the client or circumstances;

8) the amount in controversy and the results obtained;

9) the experience, reputation and ability of the attorney;

10) the undesirability of the case within the legal community in which the suit arose;

11) the nature and length of the professional relationship between attorney and client; and

12) attorneys' fees awards in similar cases.

Id. at 243-44 (quoting Barber v. Kimbrell's Inc., 577 F.2d 216, 226 n. 28 (4th Cir.1978) (adopting twelve factors set forth in Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir.1974))). "[A]ny award must be accompanied by detailed findings of fact with regard to the factors considered." In re Abrams & Abrams, P.A., 605 F.3d 238, 244 (4th Cir. 2010) (quotations omitted). "Although . . . some factors may not have much, if anything, to add in a given case, . . . the factors that do apply should be considered." Id. With respect to determination of the hourly rate, the Fourth Circuit has noted that "market rate should guide the fee inquiry, [and] the market rate should be determined by evidence of what attorneys earn from paying clients for similar services in similar circumstances, which, of course, may include evidence of what the plaintiff's attorney actually charged his client." Robinson, 560 F.3d at 244.

Here, the court determines that the hourly rates set forth in defendants' itemized statements are reasonably reflective of the market rate, because they constitute the rates for actual "fees incurred" or fees invoiced to their clients. (DE 192-1 at 2; 190-1 at 2). For the same reason, the number of claimed hours expended is also reasonable, in light of above factors 1, 5, 7, and 12, regarding time expended, time limitations, customary fee, and similar cases.[4] Factors 2, 3, and 8, regarding novelty, skill, and results obtained, also favor a finding that the amount of claimed hours is reasonable. The docket further reflects the extent and nature of representation by counsel over

---

[4] Plaintiff notes an error in the summation of the itemized fees claimed by Weyerhaeuser. Where Weyerhaeuser has accepted in reply the lesser of fees claimed and fees reportedly "incurred by Weyerhauser," (see Reply (DE 198) at 2 n. 2), the court finds reasonable the number of claimed hours.

the course of this matter, bearing on factors 6, 9, and 11, regarding attorney expectations, ability, and length of professional relationship.

Of these factors, the most compelling and informative to the court are the novelty and difficulty of the questions raised in the context of this case (factors 2 and 3), where the court has had opportunity to consider closely the substance of the work product resulting from the time claimed. The court does not accept plaintiff's suggestion in response that the fees are unreasonable based upon the amount of pages of work product and the effective per-page rate. The briefs on the motion to strike were detailed, focused, and included multiple references to supporting documents and other materials in the record. Thus, the number of pages in briefs, in itself, is not a meaningful measure of the reasonableness of claimed time expended.

In sum, the court finds reasonable the attorney's fees claimed by defendants. In accordance with the court's September 20, 2018, order, the court DIRECTS plaintiff to pay $17,208.50 to defendant Georgia-Pacific, and $5,866.50 to defendant Weyerhaeuser, as sanctions under Federal Rule of Civil Procedure 37(c).

D.    Motion for Additional Related Fees

Defendants move this court to award additional fees and costs resulting from the reopening of expert discovery, on the basis that such additional fees and costs are integral to curing the surprise identified in the court's September 20, 2018, order. Defendants seek an award of all fees and costs associated with reopening expert discovery, including the expenses anticipated upon re-deposing plaintiff's experts, and any supplemental defense expert reports that may be necessary. Plaintiff argues that the motion for additional fees is, in effect, a second motion for reconsideration that does

not satisfy the standard for modifying the court's September 20, 2018, order. In the alternative, plaintiff seeks appropriate limitations on any award of additional fees and costs.

The court agrees with plaintiff that defendants' motion for additional fees is, in effect, a second motion for reconsideration; however, under the circumstances presented, the relief sought in part is warranted. The court found in its September 20, 2018, order that plaintiff's late disclosures surprised defendants and could be remedied, in part, through an opportunity to cure the surprise. With respect to cure, the court reasoned:

> On the one hand, defendants are significantly hampered in their ability to cure because the discovery deadline has passed; defendants' experts based their own expert reports on plaintiff's experts' original expert reports and deposition testimony; defendants filed Daubert motions on the basis of plaintiff's experts' original expert reports and deposition testimony; and those motions now have been briefed fully. On the other hand, there is no trial date set, and the deadline for filing summary judgment motions is set for 30 days after the court rules upon the instant motions. Moreover, defendants have had an opportunity to address in their reply briefs the substance of plaintiff's experts' declarations.

(Order (DE 185) at 16). The court concluded that "for defendants to cure the surprise of the declarations, defendants reasonably must be given the opportunity (if desired) to go back and supplement their own experts' reports, opportunity to conduct limited supplemental depositions of plaintiff's experts, and a mechanism in conjunction with summary judgment briefing for defendants to raise any issues arising therefrom that reasonably may alter the court's Daubert analysis." (Id. at 17).

Despite determining that supplemental proceedings were necessary to cure the surprise resulting from plaintiff's late disclosures, the court did not discuss whether sharing some of the expenses thereof was warranted. Rather, the court stated at one point that "[g]iven the lack of substantial justification, as well as the considerable effort required to brief the issue of exclusion and

12

<u>to cure the late disclosure</u>, it is appropriate to shift the attorney's fee expense of briefing on the motion to [strike] to plaintiff." (Order (DE 185) at 19) (emphasis added). At another point, the court found that "limited reopening of expert discovery to allow defendants an opportunity to cure, <u>as well as a sanction for the late disclosure</u> is warranted. (<u>Id.</u>) (emphasis added). In light of the court's findings that plaintiff's late disclosures caused the need for supplemental discovery, the court clearly erred in not discussing the propriety of some sharing of the expenses of such supplemental discovery.

Upon reconsideration, the court agrees with defendants that some sharing of expenses associated with the supplemental period of discovery is warranted. The court disagrees, however, that all expenses of such period must be borne by plaintiff, where doing so could be the equivalent of writing a "blank check" to defendants to incur a potentially wide range of legal fees and expert fees at plaintiff's expense. On the one hand, the court recognizes that some anticipated expenses are an inevitable component of a supplemental period of discovery caused by plaintiff's late disclosures. On the other hand, other types of expenses are more closely tied to strategy and professional judgment of counsel, their experts, and their clients. Taking into account all the facts and circumstances of this case, including the nature of plaintiff's litigation conduct that gave rise to sanctions, the court finds that inevitable expenses reasonably may be awarded but expenses tied to strategy and professional judgment should be capped or not awarded. In addition, the court reserves final judgment as to the amount of all the expenses reasonably borne by plaintiff until after the parties have proposed details regarding the supplemental period of discovery, and until after those expenses actually have been incurred.

The following parameters will guide the court's determination of an award of expenses, absent significant change of circumstances from the present record:

1) First, plaintiff shall pay all expert deposition fees charged by <u>plaintiff's experts</u> for any supplemental depositions noticed by defendants, and each such deposition shall exceed no more than a set number of hours in length, to be determined by the court after further report by the parties as to anticipated scope of supplemental discovery.

2) Second, plaintiff shall pay all reasonable attorney's fees incurred by defendants for time spent traveling to and attending such depositions, if any.

3) Third, plaintiff shall pay a limited portion of expert witness fees charged by <u>defendants' experts</u> to prepare additional rebuttal reports, if any. Under this final category, the court will award an amount not more than 50% of such fees or $10,000.00, whichever is less, with the exact amount to be determined under a more complete record.

All other fees and costs anticipated to be incurred by defendants associated with the period of reopened discovery shall be borne by defendants, including but not limited to any additional attorney's and expert's fees incurred by defendants in preparing for depositions, evaluating discovery, or engaging in additional expert or legal work associated with the supplemental period of discovery. The court recognizes defendants' suggestion that such additional expenses may be anticipated to be substantial, potentially exceeding tens of thousands of dollars. Given the nature of the sanctionable conduct and the lack of aggravating factors, however, the court finds such expenses, which are more dependent upon subjective legal strategy, are not appropriately shifted to plaintiffs as part of sanctions in this matter.

In sum, defendants' motion for additional related fees, construed as a second motion for reconsideration, is granted in part as set forth herein. Plaintiff shall be responsible for paying those expenses of supplemental period of discovery as set forth herein, with the specific amount thereof to be determined after those expenses have been incurred. Per the court's September 20, 2018, order, the parties are DIRECTED to confer and file, within 21 days of the date of this order, a joint notice (or separate notices if necessary) proposing a period of limited additional expert discovery to allow defendants time, if desired, to amend or supplement their own experts' reports and to conduct limited supplemental depositions of plaintiff's experts, as well as a new deadline for summary judgment briefing.

E.    Motion for Clarification

In unopposed motion for clarification, defendant Georgia-Pacific asks the court to clarify "as to whether it will permit Dr. Jones to provide opinion testimony on [certain specified issues] that were not included in her report but have only been 'forecast' in Plaintiff's briefing." (Defs' Mot. (DE 194) at 3).

In the court's September 20, 2018, order, the court denied in part defendants' motion to exclude Dr. Jones's "hazard communication" opinions, without prejudice to defendants again raising arguments in favor of exclusion of such opinions in the context of a more complete record and discussion of the applicable legal issues. (Order (DE 185) at 37). In so holding, the court enumerated five statements in Dr. Jones's expert report and supplemental report where "Dr. Jones makes suggestions as to the adequacy of what defendants communicated or did not communicate to plaintiff and plaintiff's father." (Id. at 36-37). The court also noted the following, which is subject of the instant motion for clarification:

> Although not stated specifically in her expert report, plaintiff also forecasts in briefing that Dr. Jones will testify "as to <u>what warnings</u> should have been provided"; that "<u>warnings</u> were necessary"; and there was a "need to provide <u>a warning</u> regarding wood dust exposure." (Pl's Br. (DE 152) at 16-17) (emphasis added).

(Order (DE 185) at 37). This court's recitation of what plaintiff forecasted in briefing reasonably raised the issue whether the court anticipates permitting Dr. Jones to provide opinion testimony to the extent forecasted.

The court clarifies that it will not permit Dr. Jones to provide testimony on opinions that were not included in her report and supplemental report but have <u>only</u> been forecast in plaintiff's briefing. The court does not provide an advance assessment at this juncture, however, as to which opinions plaintiff forecasts in briefing that were not included in Dr. Jones's report and her supplemental report. As the court noted in its September 20, 2018, order "it is not feasible for the court to determine at this juncture whether [all the statements about hazard communications in Dr. Jones's report and her supplemental report] are in the nature of opinions and whether they are relevant and reliable." (<u>Id.</u> at 36).

In sum, the court grants defendants' motion for clarification to the extent set forth herein.

## CONCLUSION

Based on the foregoing, the court orders as follows:

1) Defendants' motion (DE 188) for reconsideration is DENIED.

2) Defendants' alternative motion (DE 188) for interlocutory appeal is DENIED.

3) In accordance with the court's September 20, 2018, order, the court DIRECTS plaintiff to pay $17,208.50 to defendant Georgia-Pacific, and $5,866.50 to defendant Weyerhaeuser, as sanctions under Federal Rule of Civil Procedure 37(c).

4) Defendants' motions (DE 190, 192) for additional related fees, construed as motions for reconsideration, are GRANTED IN PART as set forth herein. Plaintiff shall be responsible for paying those expenses of supplemental period of discovery as set forth herein, with the specific amount thereof to be determined after those expenses have been incurred.

5) The parties are DIRECTED to confer and file, within **21 days** of the date of this order, a joint notice (or separate notices if necessary) proposing a period of limited additional expert discovery to allow defendants time, if desired, to amend or supplement their own experts' reports and to conduct limited supplemental depositions of plaintiff's experts.

6) Defendants' motion for clarification (DE 194) is GRANTED to the extent set forth herein.

7) The clerk is DIRECTED to note on the face of the docket that defendant Weyerhaeuser NR Company was terminated as a party on April 17, 2018.

8) The court AMENDS and CORRECTS its September 20, 2018, order as noted herein at footnotes two and three.

SO ORDERED, this the 21st day of December, 2018.

_____
LOUISE W. FLANAGAN
United States District Judge